968 A.2d 1175

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. TERRY W. CODER, DEFENDANT–APPELLANT.

Argued February 17, 2009—Decided May 4, 2009.

452

454

*Kevin G. Byrnes,* Designated Counsel, argued the cause for appellant (*Yvonne Smith Segars,* Public Defender, attorney).

*Patricia B. Quelch,* Assistant Prosecutor, argued the cause for respondent (*Luis A. Valentin,* Monmouth County Prosecutor, attorney).

*Johanna Barba Jones,* Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Anne Milgram,* Attorney General, attorney).

Justice RIVERA–SOTO delivered the opinion of the Court.

This appeal focuses on the tension between evidence admitted under an exception to the hearsay rule and the Confrontation Clause [1] concerns initially highlighted in *Crawford v. Washington,* 541 *U.S.* 36, 124 *S.Ct.* 1354, 158 *L.Ed.*2d 177 (2004), as explained and amplified in *Davis v. Washington,* 547 *U.S.* 813, 126 *S.Ct.* 2266, 165 *L.Ed.*2d 224 (2006), and as interpreted and applied in *State v. Chun,* 194 *N.J.* 54, 943 *A.*2d 114, *cert. denied,* —— *U.S.* ——, 129 *S.Ct.* 158, 172 *L.Ed.*2d 41 (2008), *State v. Buda,* 195 *N.J.* 278, 949 *A.*2d 761 (2008), and *State in the Interest of J.A.,* 195 *N.J.*

---

[1] *U.S. Const.* amend. VI ("In all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him[.]"). New Jersey's Constitution repeats that right almost verbatim. *See N.J. Const.* art. I, ¶ 10 ("In all criminal prosecutions the accused shall have the right … to be confronted with the witnesses against him[.]").

324, 949 *A.*2d 790 (2008).[2] Following the roadmap outlined in *N.J.R.E.* 803(c)(27), both the trial court and the Appellate Division ruled that the out-of-court statements of sexual assault made by a three-year-old girl to her mother, although hearsay, were admissible under the "tender years" exception to the hearsay rule, and that the admission of those hearsay statements did not run afoul of the Confrontation Clause.

Once a trial court determines that a hearsay statement made by an unavailable declarant is admissible under an exception to the hearsay rule, an additional task remains: the determination of whether the otherwise admissible hearsay statement nonetheless is barred under the Confrontation Clause, that is, whether the statement is testimonial. Our application of that paradigm in this case leads us to hold that the three-year-old's hearsay statements were admitted properly. We therefore affirm the Appellate Division's judgment.

## I.

The relevant facts require little explanation. Defendant Terry Coder was the superintendent of the apartment building in which Joyce,[3] a three-year-old child, lived. On August 28, 2001, defendant invited Joyce and her friend, eleven-year-old Susan, into the basement of the apartment building, purportedly to see different colored pieces of wood. Because defendant was known to both girls and Susan previously had been in the basement with defendant to see defendant's model train set, they agreed and followed defendant into the basement. While there, defendant pulled his pants and Joyce's pants down, and sexually touched Joyce. Witnessing this, Susan tried to grab Joyce and leave; defendant prevented their escape by holding on to Joyce. Susan, telling

---

[2] The events and subsequent trial in this case occurred before any of *Crawford, Davis, Chun, Buda* or *J.A.* were decided.

[3] For privacy reasons, the use of surnames, other than defendant's, is avoided, and the victim and witnesses are referred to via pseudonyms.

defendant she had to use the bathroom, ran out of the basement and straight to Joyce's apartment, where she told Denise, Joyce's mother, what had happened and that Joyce was still in the basement.

Denise went to get her daughter, only to encounter a frightened Joyce climbing the stairs. Denise took her daughter into their apartment and examined her; there were no physical injuries she could identify. Denise then asked her daughter if anything hurt, and Joyce said "it hurts" as she pointed to her vagina and buttocks. Denise called the police and, while waiting for their arrival, Joyce again pointed to her vagina and buttocks and said, "Mommy, he touched me." Shortly after the police arrived and were informed of those events, defendant was taken to the police station, where he denied touching Joyce but admitted exposing himself to the girls while in the basement. Defendant was arrested, and the Monmouth County grand jury later returned a ten-count indictment that charged defendant with first-degree aggravated sexual assault, in violation of *N.J.S.A.* 2C:14–2(a)(1); second-degree sexual assault, in violation of *N.J.S.A.* 2C:14–2(c)(1); second-degree sexual assault with a minor at least four years his junior, in violation of *N.J.S.A.* 2C:14–2(b); second-degree attempt to commit aggravated sexual assault, in violation of *N.J.S.A.* 2C:5–1 and *N.J.S.A.* 2C:14–2(a)(1); two counts of second-degree attempt to commit sexual assault, in violation of *N.J.S.A.* 2C:5–1 and *N.J.S.A.* 2C:14–2(c)(1); third-degree attempt to lure or entice a child, in violation of *N.J.S.A.* 2C:13–6; fourth-degree lewdness, in violation of *N.J.S.A.* 2C:14–4(b)(1); third-degree terroristic threats, in violation of *N.J.S.A.* 2C:12–3(a); and third-degree endangering the welfare of a child, in violation of *N.J.S.A.* 2C:24–4(a).

Before jury selection, the State moved to dismiss three of the ten counts. The trial court then conducted two *Rule* 104 hearings. *See N.J.R.E.* 104. During the first of these, defendant sought to suppress the statement he had given the police when he was first taken to the station house; that motion was denied. In the second

*Rule* 104 hearing, the trial court addressed "the testimony regarding *Rule* 803(c)(27) statements of witnesses of tender age or victims of tender age." The trial court received the testimony of Joyce's mother, Denise, who testified as to what Joyce had said to her immediately following the sexual assault. Once Denise completed her testimony, Joyce—by then four years old—was called to the stand.

In response to questions posed by the court, Joyce did not remember being with her friend Susan in the basement of her apartment building; she did not remember "something with a man in the basement[;]" and she did not "remember speaking to a policeman[.]" The assistant prosecutor then asked Joyce if she knew "why you're here today[,]" whether "there are places on your body that nobody's supposed to touch[,]" whether she ever went into the basement with Susan, and whether "anything ever happen[ed] with you and [Susan] that made you feel sad[.]" In each instance, Joyce shook her head "no." Defense counsel waived cross-examination. No one—neither the trial court, nor the prosecutor, nor defense counsel—ever asked Joyce to corroborate her mother's testimony, that is, if she ever told her mother that defendant had touched her and that it hurt where he touched her.

Defining the question presented as whether Denise, Joyce's mother, would be permitted to testify as to Joyce's two out-of-court statements, the trial court directly inquired whether defendant was objecting to their admission. Defense counsel advised that he was "going to leave that in your discretion, Judge." The trial court then observed that *Rule* 803(c)(27) explicitly addresses statements made by "a child under the age of 12 relating to sexual misconduct committed with or against that child[.]" Parsing the *Rule* into its component parts, the trial court first addressed the provisions of *N.J.R.E.* 803(c)(27)(a), noting that such statements are "admissible in a criminal proceeding if ... the proponent of the statement makes known to the adverse party his intention to offer the statement and the particulars of the statement at such

time to provide him with a fair opportunity to prepare to meet it." After receiving uncontested assurances from the State that there had been compliance with the notice provisions of *Rule* 803(c)(27)(a), the trial court moved on to subsection (b) of the *Rule*, ruling that, based on "a hearing conducted pursuant to *Rule* 104, [and] that on the basis of the time, content and circumstances of the statement[,] there is a probability that the statement is trustworthy[.]"

The trial court then shifted its focus to the application of *N.J.R.E.* 803(c)(27)(c), which provides that, as a condition precedent to the admission of a hearsay statement under the "tender years" exception, "either (i) the child testifies at the proceeding, or (ii) the child is unavailable as a witness and there is offered admissible evidence corroborating the act of sexual abuse[.]" The trial court remarked that "we did hear from [Joyce], now age four, and she's just about communicative, and all the references to the defendant, to the basement, to any contact, she has denied." The trial court ultimately determined that Denise could testify as to Joyce's hearsay statements, finding that Joyce "is available to testify [and that] the fact that she doesn't recollect is just something I have to consider in the totality of the circumstances." In sum, the trial court ruled that it would "permit [Denise] to testify in regard to … the verbal responses from her daughter [Joyce]."

After Denise testified at trial concerning the statements Joyce had made on the date of her assault, the trial court explained to the jury that one of the trial court's tasks

as a judge, is to make a determination as to the ability of a witness to testify, especially when it comes to somebody of very tender years as [Joyce] is four now. And when this thing allegedly happened she was three.

So we had a hearing yesterday out of the presence of the jury. And she sat up here and I asked her some questions about who she was and where she was. And she whispered in the lowest whisper as you could possibly understand. But I asked her questions about this incident. And she had no recollection at all. She didn't remember anything or anybody. Her answer was no, I don't know, don't know, don't know, she knew nothing.

So rather than put her back on the stand and go through the same thing, I've asked both counsel if this would be acceptable for me to advise you. Ms. [assistant prosecutor] you agreed I guess.

[Assistant Prosecutor]: Yes, sir.

THE COURT: Mr. [defense counsel] you agreed also. So rather than bring her up here ... you know who she is and she's not going to testify today.

Defendant was convicted of four of the remaining seven counts: second-degree sexual assault with a minor at least four years his junior, in violation of *N.J.S.A.* 2C:14–2(b); second-degree attempt to commit sexual assault, in violation of *N.J.S.A.* 2C:5–1 and *N.J.S.A.* 2C:14–2(b); fourth-degree lewdness, in violation of *N.J.S.A.* 2C:14–4(b)(1); and third-degree endangering the welfare of a child, in violation of *N.J.S.A.* 2C:24–4(a). He later was sentenced to an aggregate of eleven years imprisonment, with a minimum of seventy-one months to be served without parole, together with appropriate penalties and assessments.

Defendant appealed and, in an unpublished decision, the Appellate Division affirmed defendant's convictions and sentence. Addressing specifically "defendant's claim that because [Joyce] did not testify at trial, the admission of her out-of-court statements was a violation of the Confrontation Clause as interpreted by the Supreme Court in *Crawford v. Washington, supra* [,]" the panel noted that " '[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.' " (quoting *Id.* at 68–69, 124 *S.Ct.* at 1374, 158 *L.Ed.*2d at 203). It noted that, although *Crawford* "declined to define 'testimonial,' " that term " 'applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.' " (quoting *Id.* at 68, 124 *S.Ct.* at 1374, 158 *L.Ed.*2d at 203).

Seeking further definition for the term "testimonial," the panel looked to *Davis, supra,* which explained:

Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such

ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. [*Id.* at 822, 126 *S.Ct.* at 2273–74, 165 *L.Ed.*2d at 237 (footnote omitted).]

It additionally noted that " 'interrogations solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator[,]' constituted 'testimonial hearsay[,]' " *id.* at 826, 126 *S.Ct.* at 2276, 165 *L.Ed.*2d at 240, and that " 'it is in the final analysis the declarant's statements, not the interrogator's questions, that the Confrontation Clause requires us to evaluate[,]' " *id.* at 822 n. 1, 126 *S.Ct.* at 2274 n. 1, 165 *L.Ed.*2d at 237 n. 1.[4]

Turning to the application of its reasoning, the Appellate Division initially disagreed "with the judge's finding that [Joyce] was 'available' to testify." It noted that "[w]hile she was physically present, her responses on voir dire demonstrate that cross-examination would have been utterly fruitless." For that reason, the panel determined that Joyce "was unavailable for Confrontation Clause purposes." However, the panel "conclude[d] that [Joyce]'s several statements to her mother were not testimonial." It reasoned as follows:

The statements were made before any police involvement. The first statement made to [Denise] was made before the police were even contacted about the incident. Additionally, the statement was made shortly after the incident occurred when [Joyce] was frightened, nervous and very scared. The record also shows that while the statements were in response to questioning, the questions were open-ended and designed to determine if [Joyce] was physically injured. The second statement came within an hour of the alleged assault when [Dénise], while waiting for police, sought to determine the events that caused [Joyce] to point to her vagina

---

[4] The panel then analyzed the case in light of the Appellate Division's decisions in *State v. Buda*, 389 *N.J.Super.* 241, 912 *A.*2d 735 (App.Div.2006), and *State in the Interest of J.A.*, 385 *N.J.Super.* 544, 897 *A.*2d 1119 (App.Div.2006). Although certification had been granted in both of those cases, the panel rendered its decision in this case before this Court decided either *Buda* or *J.A. See Buda, supra; J.A., supra.* Because the Appellate Division's judgment in those cases was not sustained by this Court—*Buda* affirmed in part and reversed in part the judgment of the Appellate Division, *Buda, supra,* 195 *N.J.* at 308, 949 *A.*2d 761, while *J.A.* outright reversed the judgment of the Appellate Division, *J.A., supra,* 195 *N.J.* at 351–52, 949 *A.*2d 790—we forego any further discussion of the panel's reliance on those now overruled cases.

and buttocks and to say, "Mommy, it hurts." There is no indication in the record that [Denise] was asking these questions in the hopes of obtaining evidence for a future prosecution against defendant. This was simply a situation where a mother was attempting to determine if her young daughter was injured, and if so, how and to what extent. There was no confrontation violation under the circumstances.

We granted defendant's petition for certification to determine whether the trial court abused its discretion in admitting Joyce's out-of-court statements under *N.J.R.E.* 803(c)(27). 196 *N.J.* 341, 953 *A.*2d 760 (2008). We also granted the application of the Attorney General for leave to appear as amicus curiae. For the reasons that follow, we affirm the judgment of the Appellate Division.

## II.

Defendant's challenge to the admission of Joyce's hearsay statements is two-fold. First, he claims that Joyce's statements do not meet the criteria for admission under the "tender years" exception to the hearsay rule, *N.J.R.E.* 803(c)(27), and, hence, their admission constituted an abuse of discretion. Second, defendant asserts that, even if Joyce's hearsay statements qualified under the "tender years" hearsay exception, their admission nevertheless violated his Confrontation Clause rights.

In response, the State urges the converse: that Joyce's hearsay statements properly qualified under the "tender years" exception to the prohibition against hearsay, and that statements of a child-victim to his or her parents about abuse suffered are nontestimonial and, for that reason, do not raise Confrontation Clause concerns.

Amicus the Attorney General of New Jersey argues that the trial court laid a proper foundation for the admission of Joyce's hearsay statements pursuant to the "tender years" exception, and that no constitutional infirmity infected that determination.

■ As a threshold matter, we address the analytical paradigm that applies whenever a hearsay statement is offered into evidence. We then apply that analysis to the "tender years" excep-

tion embodied in *N.J.R.E.* 803(c)(27). Finally, we consider whether the absence of confrontation rights in respect of Joyce's hearsay statements violated the Confrontation Clause.[5]

III.

 Our *Rules of Evidence* provide the basic blueprints for the admission of evidence. As an initial inquiry, we examine whether evidence tendered is relevant, that is, whether it is "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." *N.J.R.E.* 401. If the evidence is deemed relevant, our *Rules* are clear: "[e]xcept as otherwise provided in these *[R]ules* or by law, all relevant evidence is admissible." *N.J.R.E.* 402.[6] That general

---

[5] In *Chun, Buda* and *J.A.*, we laid out the decisional priorities relevant in this context as a lineal progression. Assuming the proffered statement is both relevant and not otherwise excluded, a determination must be made whether that statement is hearsay. If the statement is hearsay, it must be determined whether an exception to the hearsay rule exists to permit the statement's admission. If there is a hearsay exception applicable, then it must be determined whether the statement is "testimonial" and, hence, implicates Confrontation Clause concerns. *See Chun, supra,* 194 *N.J.* at 139, 943 *A.*2d 114 (recognizing analytical paradigm as "we must consider first whether particular evidence is admissible under the ordinary rules of evidence and then whether it is testimonial, thus requiring the declarant to be made available for cross-examination"); *Buda, supra,* 195 *N.J.* at 292, 949 *A.*2d 761 (noting that "we address first whether [the child-victim]'s statements ... qualify as . . admissible [under a hearsay exception and w]e then turn to whether those statements are 'testimonial' within the meaning of *Crawford* and *Davis* "); *J.A., supra,* 195 *N.J.* at 329, 949 *A.*2d 790 (noting that "we must determine whether statements made by a non-testifying witness ... were admitted in violation of our state hearsay rules and the Sixth Amendment's Confrontation Clause"). We follow that ordinal sequence here.

[6] *Rule* 402's mandate is not as categorical as it first appears. *N.J.R.E.* 403 provides that "relevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." Other limitations on the admission of seemingly relevant evidence also apply. *See, e.g., N.J.S.A.* 2A:61B–1(d)(1) (child sexual abuse shield law); *N.J.S.A.* 2C:14–7 (Rape Shield Law); *N.J.R.E.* 404 (limitations

proposition—that relevant evidence is presumptively admissible—establishes the backdrop against which we consider the admission of Joyce's out-of-court statements. In particular, because it cannot be disputed that Joyce's out-of-court statements to her mother constitute relevant evidence not otherwise subject to a relevance bar, we turn to whether those out-of-court statements are hearsay.

## A.

 In a strikingly similar context, we recently addressed the admission of an out-of-court statement by a child sexual abuse victim as follows:

> *N.J.R.E.* 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted[,]" and *N.J.R.E.* 802 starkly explains that "[h]earsay is not admissible except as provided by [the *Evidence Rules*] or by other law." Stated differently, "the hearsay rule applies when a declaration is offered to prove the truth of the statement attributed to the declarant." *State v. Long,* 173 *N.J.* 138, 152 [801 *A.*2d 221] (2002). The opposite also holds: "if evidence is not offered for the truth of the matter asserted, the evidence is not hearsay and no exception to the hearsay rule is necessary to introduce that evidence at trial." *Ibid.* (citation omitted).
>
> [*Buda, supra,* 195 *N.J.* at 292, 949 *A.*2d 761.]

*Buda's* reasoning applies four-square here. As in *Buda,* "[a]ll parties agree, as they must, that defendant was charged with assaulting and endangering [Joyce] and, for that reason, [Joyce]'s out-of-court statements speaking to the core matter asserted—whether defendant had assaulted and endangered [Joyce]—were hearsay." *Ibid.* The legal conclusion thus becomes inescapable: "the[ ] preliminary admissibility [of those hearsay statements] hinges on whether an exception to the hearsay rule applies." *Id.* at 292–93, 912 *A.*2d 735. We therefore must turn to whether

---

on character evidence); *N.J.R.E.* 405 (limitations on modes of proof of character); *N.J.R.E.* 406 (evidence of habit or routine practice); *N.J.R.E.* 407 (evidence of subsequent remedial measures); *N.J.R.E.* 408 (evidence of settlement offers and negotiations); *N.J.R.E.* 409 (evidence of payment of medical and similar expenses); *N.J.R.E.* 410 (evidence of pleas, plea discussions and related statements); *N.J.R.E.* 411 (evidence of liability insurance); *N.J.R.E.* 500 to 519 (privileges).

Joyce's hearsay statements are admissible under an exception to the hearsay rule.

## B.

■ Joyce's out-of-court hearsay statements were offered at trial through her mother, Denise, as qualifying under the "tender years" exception to the hearsay rule. As codified in *N.J.R.E.* 803(c)(27), the "tender years" exception provides in full as follows:

> *Rule 803. Hearsay Exceptions Not Dependent on Declarant's Unavailability.* The following statements are not excluded by the hearsay rule:
>
> . . . .
>
> (c) *Statements Not Dependent on Declarant's Availability.* Whether or not the declarant is available as a witness:
>
> . . . .
>
> (27) *Statements by a Child Relating to a Sexual Offense.* A statement made by a child under the age of 12 relating to sexual misconduct committed with or against that child is admissible in a criminal, juvenile, or civil proceeding if (a) the proponent of the statement makes known to the adverse party an intention to offer the statement and the particulars of the statement at such time as to provide the adverse party with a fair opportunity to prepare to meet it; (b) the court finds, in a hearing conducted pursuant to *Rule* 104(a), that on the basis of the time, content and circumstances of the statement there is a probability that the statement is trustworthy; and (c) either (i) the child testifies at the proceeding, or (ii) the child is unavailable as a witness and there is offered admissible evidence corroborating the act of sexual abuse; provided that no child whose statement is to be offered in evidence pursuant to this rule shall be disqualified to be a witness in such proceeding by virtue of the requirements of *Rule* 601.

Assuming the proffered hearsay statement qualifies as one made "by a child under the age of 12 relating to sexual misconduct committed with or against that child[,]" the "tender years" exception consists of three component parts. The first, under *N.J.R.E.* 803(c)(27)(a), requires that the proponent of a hearsay statement of a child sexual abuse victim must provide advance notice of the statement "at such time as to provide the adverse party with a fair opportunity to prepare to meet it[.]" Here, there was no question that the State provided defendant ample notice that Joyce's hearsay statements concerning the sexual abuse she suffered at defendant's hands would be offered at trial. Second, under *N.J.R.E.* 803(c)(27)(b), the trial court must conduct a hearing

under *Rule* 104(a) [7] and determine whether "on the basis of the time, content and circumstances of the statement there is a probability that the statement is trustworthy[.]" Again, in this case, the trial court conducted a *Rule* 104 hearing concerning the admissibility of Joyce's hearsay statements and ruled that "on the basis of the time, content and circumstances of the statement there is a probability that the statement is trustworthy[.]" No serious challenge is mounted against the trial court's determinations in respect of the satisfaction of both subsections (a) and (b) of *N.J.R.E.* 803(c)(27).

The true core of the dispute between the parties rests in the trial court's determinations in respect of the final two-part prong of the "tender years" exception: whether the victim-witness "testifies at the proceeding" or whether the victim-witness "is unavailable as a witness and there is offered admissible evidence corroborating the act of sexual abuse[.]" *N.J.R.E.* 803(c)(27)(c)(i) and (ii). It is on that conflict that we now focus.

## C.

The trial court determined at the *Rule* 104 hearing that Joyce was "available" as a witness pursuant to *N.J.R.E.* 803(c)(27)(c)(i) and, hence, all conditions precedent to the admission of her hearsay statements through her mother were present. Defendant challenges that conclusion, and we are compelled to agree. The transcript of the *Rule* 104 hearing makes clear that Joyce, by then four years old, did not recall the events that occurred when she was three. Indeed, her failure of recollection was so severe that defendant waived any cross-examination of her. Yet, the trial court nevertheless concluded that Joyce "is available

---

[7] *N.J.R.E.* 104(a) ("When the qualification of a person to be a witness, or the admissibility of evidence, or the existence of a privilege is subject to a condition, and the fulfillment of the condition is in issue, that issue is to be determined by the judge. In making that determination the judge shall not apply the rules of evidence except for *Rule* 403 or a valid claim of privilege. The judge may hear and determine such matters out of the presence or hearing of the jury.").

to testify [and that] the fact that she doesn't recollect is just something I have to consider in the totality of the circumstances." That conclusion was in error.

Although *Rule* 803(c)(27)(c) does not define its meaning plainly when it juxtaposes a child-witness "testif[ying] at the proceeding" against the child-witness being "unavailable as a witness[,]" helpful informational guidance is found within the *Rules of Evidence* themselves. *N.J.R.E.* 804(a) sets forth a clear and cogent definition of the "unavailability" of a witness. It provides that

> [e]xcept when the declarant's unavailability has been procured or wrongfully caused by the proponent of declarant's statement for the purpose of preventing declarant from attending or testifying,[8] a declarant is "unavailable" as a witness if declarant:
>
> (1) is exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the statement; or
>
> (2) persists in refusing to testify concerning the subject matter of the statement despite an order of the court to do so; or
>
> (3) testifies to a lack of memory of the subject matter of the statement; or
>
> (4) is absent from the hearing because of physical or mental illness or infirmity, or other cause, and the proponent of the statement is unable by process or other reasonable means to procure the declarant's attendance at trial[.]
>
> [*N.J.R.E.* 804(a).]

Clearly, Joyce's inability or unwillingness to testify at the *Rule* 104 hearing concerning the events of August 28, 2001, coupled with the fact that she was not even called as a witness at trial, rendered her "unavailable" under *N.J.R.E.* 804(a)(3) because she did not recall the events. For those reasons, we conclude that the trial court abused its discretion when it concluded that the condition precedent codified at *N.J.R.E.* 803(c)(27)(c)(i) was satisfied.

 That, however, does not end the inquiry. The "tender years" exception further provides that, even if the child-witness is unavailable, the child-witness's hearsay statement concerning sexual abuse nonetheless may be admissible if "there is offered

---

[8] This exception—the forfeiture-by-wrongdoing exception to the hearsay rule—recently was addressed at length in *State v. Byrd*, 198 *N.J.* 319, 967 A.2d 285 (2009).

admissible evidence corroborating the act of sexual abuse[.]" *N.J.R.E.* 803(c)(27)(c)(ii). And, in this case, there was corroboration: Susan testified to having witnessed defendant pulling his pants and Joyce's pants down, and sexually touching Joyce. Therefore, because Joyce's hearsay statements concerning the sexual abuse she suffered satisfied all three prongs—subsections (a), (b) and (c)(ii)—of the "tender years" exception, the trial court did not abuse its discretion in admitting those statements through Joyce's mother. *See Hisenaj v. Kuehner*, 194 *N.J.* 6, 12, 942 *A.*2d 769 (2008) ("In reviewing a trial court's evidential ruling, an appellate court is limited to examining the decision for abuse of discretion."); *Brenman v. Demello*, 191 *N.J.* 18, 31, 921 *A.*2d 1110 (2007) ("Because the determination made by the trial court concerned the admissibility of evidence, we gauge that action against the palpable abuse of discretion standard.").

### D.

 Because Joyce was "unavailable" to testify at trial, we also must determine whether the admission of her hearsay statements violated defendant's Confrontation Clause rights. We need not linger long on this point.

 *Crawford, supra,* explains that the Confrontation Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." 541 *U.S.* at 61, 124 *S.Ct.* at 1370, 158 *L.Ed.*2d at 199. Not all hearsay evidence, however, is interdicted by the Confrontation Clause. As *Crawford* made clear, "[t]he constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement." *Id.* at 51, 124 *S.Ct.* at 1364, 158 *L.Ed.*2d at 192–93. Thus, only "testimonial" statements trigger a defendant's Confrontation Clause rights. *See Id.* at 53–54, 124 *S.Ct.* at 1365, 158 *L.Ed.*2d at 192 (explaining that Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to

testify, and the defendant had had a prior opportunity for cross-examination").

*Buda* specifically addressed the question presented in this appeal. In that case, a child-victim told his mother that "Daddy beat me." *Buda, supra,* 195 *N.J.* at 304, 949 *A.*2d 761. The Court concluded that the child-victim's hearsay statement qualified under an exception to the hearsay rule [9] and did "not bear the indicia of 'a formal statement to government officers' but instead [is] akin to 'a casual remark to an acquaintance[.]' " *Ibid.* (quoting *Crawford, supra,* 541 *U.S.* at 51, 124 *S.Ct.* at 1364, 158 *L.Ed.*2d at 192). We therefore held that the child-victim's "statement to his mother that 'Daddy beat me' is nontestimonial." *Ibid.*

For Confrontation Clause purposes, we discern no substantive difference between the child-victim's statement to his mother in *Buda* and Joyce's statements to her mother here: both were given to the children's respective mothers, and neither mother acted "predominantly as an agent/proxy or an operative for law enforcement in the collection of evidence of past crimes for use in a later criminal prosecution, circumstances that may well render the hearsay statements thereby procured testimonial under *Crawford.*" *Id.* at 307, 949 *A.*2d 761. Because Joyce's hearsay statements lack any indicia that they resulted from law enforcement efforts "to establish or prove past events potentially relevant to later criminal prosecution[,]" *Davis, supra,* 547 *U.S.* at 822, 126 *S.Ct.* at 2274, 165 *L.Ed.*2d at 237 (footnote omitted), we do not hesitate in concluding that Joyce's hearsay statements to her mother were nontestimonial and, hence, defendant's Confrontation Clause rights were not compromised by the admission of those statements into evidence.

---

[9] *Buda* did not implicate the "tender years" exception to the hearsay rule; the trial court in *Buda* determined that the child-victim's hearsay statement to his mother qualified for admission as an excited utterance under *N.J.R.E.* 803(c)(2) and we concurred. *Buda, supra,* 195 *N.J.* at 296, 949 *A.*2d 761.

## IV.

In sum, we conclude that Joyce's out-of-court statements, as testified to by her mother, were relevant; that their probative value was not substantially outweighed by their prejudicial effect, and were not otherwise subject to a relevance or privilege bar; that they were offered to prove the truth of the matter asserted and, therefore, were hearsay; that they were admissible under the "tender years" exception to the hearsay rule; and that they were not "testimonial" and, thus, did not implicate defendant's Confrontation Clause rights. For those reasons, the judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.