997 A.2d 954

THE ESTATE OF NICK HANGES, PLAINTIFF–RESPONDENT, v.
METROPOLITAN PROPERTY & CASUALTY INSURANCE
COMPANY, DEFENDANT–APPELLANT.

Argued March 22, 2010—Decided June 21, 2010.

*Jerald J. Howarth* and *Purnima D. Ramlakhan,* argued the cause for appellant (*Howarth & Associates,* attorneys).

*Demetrios K. Stratis,* argued the cause for respondent.

Justice RIVERA–SOTO delivered the opinion of the Court.

*N.J.R.E.* 804(b)(6) codifies an exception to the hearsay rule. It allows, in civil proceedings only, the admission of "a statement made by a person unavailable as a witness because of death if the statement was made in good faith upon declarant's personal knowledge in circumstances indicating that it is trustworthy." *Ibid.*

In the context of a summary judgment motion, the trial court disallowed the admission of several hearsay statements made by a decedent concerning the cause of an automobile accident, ruling that, because it was in the decedent's self-interest to color the version of the events he gave to the police in the light most favorable to him, that self-interest automatically rendered that hearsay statement not in good faith and untrustworthy, thus inadmissible. The Appellate Division, although sustaining several of the evidentiary determinations made by the trial court concern-

ing the decedent's later hearsay statements, disagreed with the trial court's rejection of the statements made by the decedent to a police officer shortly after the accident. It concluded that there was no factual basis in the record to support the trial court's determination that such statement was not made in good faith or was not trustworthy.

We agree. As a threshold matter, we observe that, ordinarily, an evidentiary determination made during trial is entitled to deference and is to be reversed only on a finding of an abuse of discretion; we see no reason to impose a different standard of review on an evidentiary determination made, as here, in the context of a summary judgment application. Applying that standard of review, the record discloses that the sole reason proffered by the trial court in determining that the hearsay statement was not trustworthy—that it was in the declarant's self-interest to make the statement—lacked an evidential foundation. In those circumstances, the trial court's determination constituted an abuse of discretion and cannot be sustained.

## I.

Because this appeal arises in the context of a summary judgment application, we are obliged to view the facts in the light most favorable to the non-moving party. *Guido v. Duane Morris, LLP*, 202 *N.J.* 79, 82, 995 *A.2d* 844 (2010) (citing *Roa v. LAFE*, 200 *N.J.* 555, 562, 985 *A.2d* 1225 (2010); *Lee v. First Union Nat'l Bank*, 199 *N.J.* 251, 254, 971 *A.2d* 1054 (2009); *Leang v. Jersey City Bd. of Educ.*, 198 *N.J.* 557, 567–68, 969 *A.2d* 1097 (2009)).

In the mid-afternoon hours of Sunday, October 31, 2004, decedent Nick J. Hanges was involved in a one-car accident in Clifton, when he crashed his vintage 1974 Triumph TR–6 sports car into an underpass wall. The police responded to the accident scene. Answering questions posed by a police officer, decedent attributed the cause of the accident to a "phantom vehicle." Decedent explained that he "was traveling South on the Route 20 ramp from Rt. 20 South when a blue [C]orvette ([C]hev[rolet]) traveling in the same direction cut him off." He added that, as a

result, "he lost control of his vehicle and struck the Rt. 46 underpass wall." Decedent "had complaints of leg & chest pain and had a large cut on his chin. After making his statement[,] he passed out.[1] He was transported to [the Trauma Center at St. Joseph's Regional Medical Center in Paterson] by Ambulance # 89."

Once at the hospital, medical personnel inquired of decedent as to the cause of his injuries. The medical chart reflects that decedent stated that he was "driv[ing a] sports car, was cut off[, was] forced to make a left turn [and] crashed into [a] bridge [abutment]." The next day, while still hospitalized, decedent contacted his psychologist, cancelled the therapy session they previously scheduled for that day, and informed her that "he was in an auto accident yesterday[ and] stated he was 'cut off' by another car and has multiple injuries[.]" Because decedent was "fearful . . . he did not know what kind of treatment he would be receiving at the hospital and [was] feeling isolated and vulnerable[,]" his psychologist "suggested he contact his sister [in Florida] and her husband, who is a physician, so that they might intervene in getting him some answers." Decedent agreed.

---

[1] Decedent's statements in the police report are, without equivocation, hearsay, *see N.J.R.E.* 801(c) (defining "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted"), that presumptively are inadmissible. *See N.J.R.E.* 802 ("Hearsay is not admissible except as provided by these rules or by other law."). The police report containing those statements likewise is hearsay, and also is inadmissible in the absence of an exception to the hearsay rule. *Ibid.* Therefore, decedent's statements are "hearsay-within-hearsay," each level of which—the police report and then the contents of that report—requires a separate basis for admission into evidence, *see N.J.R.E.* 805 ("A statement within the scope of an exception to *Rule* 802 shall not be inadmissible on the ground that it includes a statement made by another declarant which is offered to prove the truth of its contents if the included statement itself meets the requirements of an exception to *Rule* 802."). Because the parties concede that the police report, albeit a hearsay statement, is admissible as a record of regularly conducted activity, *N.J.R.E.* 803(c)(6) ("business records" exception to hearsay rule); *State v. Lungsford,* 167 *N.J.Super.* 296, 310, 400 A.2d 843 (App.Div.1979), we focus solely on the hearsay-within-hearsay in that police report: decedent's statements to the police.

Decedent contacted his family in Florida and, upon his discharge from the hospital, was transported there. He received additional medical treatment in Florida where, in a report to a physician, decedent explained that he had been "involved in an automobile accident on 10–31–04. He was run off the road, [and] hit a cement barrier in a [small sports car]." Decedent was treated in Florida until he returned to New Jersey in late November/early December.

In the interim, an uninsured motorist claim was made under the automobile insurance covering the car decedent drove into the underpass wall. According to an automobile loss notice form dated November 4, 2004—four days after the accident—the accident occurred because the "[a]ccelerator stuck and insured hit the divider." That form makes no mention of a "phantom vehicle," of decedent being "cut-off," or of those events having been the cause of the accident and decedent's resulting injuries.

Decedent returned to see his psychologist in New Jersey on December 6, 2004. She described decedent as "looking tired with some weight loss." Decedent stated "he was taking pain medications as directed" but that his "[m]ood [was] depressed with some hopelessness about being able to function adequately at work in [the] future due to [the] nature of [his] leg injury." He rejected—seemingly not for the first time—using anti-depressants. He nevertheless expressed some hope for the future. As noted by the psychologist, "[d]ue to his injuries, I made the suggestion that we have a phone session next week rather than drive to my office. He agreed."

As the trial court found, "[s]ometime that evening or during the next morning the decedent committed suicide."

Approximately eighteen months later, on May 8, 2006, the Estate of Nick Hanges, as the named plaintiff,[2] filed suit in the

---

[2] In contrast to this action on an insurance contract, wrongful death actions on behalf of a decedent must be prosecuted "in the name of an administrator ad

Law Division against defendant Metropolitan Property & Casualty Insurance Co. In its complaint, plaintiff alleged that decedent had purchased uninsured motorist coverage from defendant and that such insurance should have covered the damages arising from the October 31, 2004 accident. After filing its answer, which included several affirmative defenses and additional demands for relief, defendant moved for summary judgment; plaintiff opposed that application and cross-moved for partial summary judgment.

In short, defendant asserted that it was not liable under the uninsured motorist portion of plaintiff's automobile insurance policy because "[t]here exists no competent proof that a 'phantom vehicle' was involved in the October 31, 2004 accident." Plaintiff opposed that application, submitting copies of (1) the police report of the accident, which sets forth decedent's explanation of the accident; (2) the trauma chart from St. Joseph's Regional Medical Center, which also includes decedent's explanation of the accident, one consistent with the explanation he gave to the police earlier that day; (3) the report of his treating physician in Florida, to whom decedent also claimed he had been injured when he was "cut-off;" and (4) the notes of his treating psychologist, which also are consistent with decedent's description of this car accident.

On March 14, 2008, the trial court heard argument on both the motion and cross-motion for summary judgment and, on March 20, 2008, the trial court issued its written, unpublished decision. It defined the issue presented as "whether . . . the decedent's statement, included in a police report and contained in certain medical reports[,] concerning his version of an automobile accident [is] admissible as an exception to the hearsay rule where the declarant died [sometime] later but not as a result of this accident." In

---

prosequendum of the decedent for whose death damages are sought, except where decedent dies testate and his will is probated, in which event the executor named in the will and qualifying, or the administrator with the will annexed, as the case may be, shall bring the action." *N.J.S.A.* 2A:31–2. *See, e.g., Bauer v. Nesbitt,* 198 *N.J.* 601, 969 *A.2d* 1122 (2009) (wrongful death action prosecuted by decedent's mother as administratrix ad prosequendum).

respect of whether decedent's admittedly hearsay statements to the police recorded in the police report qualified for admission, the trial court reasoned that plaintiff had

> failed to proffer adequate proof that there was an absence of opportunity for contrivance and misrepresentation. The decedent made this statement after waiting at the scene of the accident for a police officer to arrive which gave him adequate time for deliberation and reflection. The statement was not spontaneous nor was it made while under the stress of excitement. The decedent had reason to misrepresent what happened because his was the only vehicle involved in this accident. *His statement to the police officer was an attempt to shift the responsibility [for] the accident and injuries he incurred to an unknown phantom vehicle.* The statement lacks any reliability or trustworthiness and therefore cannot be admitted into evidence.
>
> The decedent was under no duty to report his version of the accident in a truthful manner; in fact, he had much to gain by giving the police officer a self-serving account of what occurred. By stating that his crash was caused by a phantom blue Corvette the decedent would have shifted responsibility of the accident from himself to another cause. Thus freeing himself from any potential liability for this accident and potentially shifting it to his own [uninsured motorist] insurance carrier.
>
> [(Emphasis supplied).]

Specifically in respect of the admissibility of decedent's statements to the police under *N.J.R.E.* 804(b)(6), the trial court reasoned that

> the statement made by the decedent to the police officer is inadmissible under the hearsay exception for unavailable declarants. Statements made by declarants who are unavailable to be cross-examined at trial will be admitted, only if the statement was made in good faith and if there is a probability from the circumstances that the statement is trustworthy. As stated above, [plaintiff] has failed to show that the decedent's statement was made in good faith or it was ... trustworthy. The decedent had reason to not be forthcoming in this situation.... [U]nder the circumstances in which the statement was made there is great incentive for a driver to skew the facts in [his] favor. For this reason the statements do not possess the requisite trustworthiness or reliability to be admitted under the hearsay exceptions for unavailable declarants and therefore cannot be admitted as evidence.

For those reasons, the trial court concluded that there was an absence of competent proofs sufficient to trigger uninsured motorist insurance coverage liability on defendant's part. It therefore granted defendant's summary judgment motion and denied plaintiff's cross-motion for summary judgment.[3]

---

[3] Neither plaintiff nor defendant has claimed that the application of the truncated summary judgment procedures followed in this case somehow pre-

Plaintiff appealed and defendant cross-appealed.[4] On plaintiff's appeal, the Appellate Division, in an unpublished opinion, affirmed in part and reversed in part the judgment of the trial court; in that same opinion, the panel affirmed outright the trial court's findings and conclusions in respect of defendant's cross-appeal. As an initial matter, the panel "agree[d] with the trial court's decision respecting decedent's statements to the two treating physicians[, one at the Trauma Center at St. Joseph's Regional Medical Center and another in Florida,] and the psychologist" and ruled that those statements were inadmissible hearsay. The Appellate Division "disagree[d], however, with the trial court's conclusion that decedent's statements to the police officer immediately after the accident are inadmissible hearsay[,]" reasoning that "the statements to the police officer are clearly admissible under *N.J.R.E.* 804(b)(6), the declaration of a decedent." [5]

The panel explained that "*N.J.R.E.* 804(b)(6) provides that trustworthy statements made by a decedent are admissible under

---

vented the presentation of relevant evidence. "We can, therefore, consider the case only as it has been unfolded to that point[.]" *Bilotti v. Accurate Forming Corp.*, 39 *N.J.* 184, 188, 188 *A.2d* 24 (1963). In respect of a summary judgment motion, an appellate court is bound by the summary judgment factual record developed before the trial court and applies to that record the governing legal standards. *Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A.*, 189 *N.J.* 436, 445–46, 916 *A.2d* 440 (2007).

[4] Defendant cross-appealed, claiming error in respect of three orders entered by the trial court prior to granting defendant's motion for summary judgment: (1) an order reinstating the complaint after plaintiff's failure to provide discovery; (2) an order dismissing the complaint for plaintiff's failure to provide an expert's report; and (3) an order vacating the earlier order of dismissal and reinstating the complaint. Because none of those issues are part of the appeal before this Court, we need not address the substance of those claims.

[5] The Appellate Division did not state expressly the standard of review it applied: whether it reviewed the decision of the trial court as an erroneous evidentiary determination subject to the abuse of discretion standard of review, or as an error of law subject to de novo review. Because the determination of the appropriate standard of review in this setting has bedeviled the parties, we directly address that question later in this opinion.

[certain enumerated] conditions[.]" It noted that "[t]he *Rule* requires that the trial court, before admitting the evidence, find that the declarant is dead, the statement was made in good faith, the statement was made upon the declarant's own personal knowledge, and that there is a probability from the circumstances that the statement is trustworthy." (citing *DeVito v. Sheeran*, 165 *N.J.* 167, 194, 755 *A.*2d 1147 (2000)). It underscored that " '[a] trial court must make particularized findings of good faith, personal knowledge and trustworthiness prior to the admission of evidence of this nature under this hearsay exception.' " (quoting *ibid.*).

Rejecting the trial court's analysis that the self-serving nature of the statements suffices to render them untrustworthy, the Appellate Division found that "[t]he declarant was clearly deceased and there does not appear to be any dispute that his statement regarding the 'phantom vehicle' was made from his personal knowledge." It stressed that "[t]here is nothing in the record, moreover, to indicate that the statement was not made in good faith or that it was otherwise lacking in reliability or trustworthiness." Underscoring that "[t]he trial court need not find the statement *absolutely* trustworthy before it may be admitted under the *Rule*" (emphasis in original), the panel explained that the trial court "need only find a probability that the statement is trustworthy from the circumstances surrounding its making." (citing *DeVito, supra*, 165 *N.J.* at 195, 755 *A.*2d 1147; *Ayala v. Lincoln*, 147 *N.J.Super.* 304, 307, 371 *A.*2d 302 (App.Div.1977)). It enumerated the "factors relevant in consideration of trustworthiness to include: whether the statement was made under oath; the duration of the time between the event and the statement; whether the declarant had first-hand knowledge; and the credibility of the declarant." (citing *DeVito, supra*, 165 *N.J.* at 195–96, 755 *A.*2d 1147).

The Appellate Division applied those factors, reasoning that "[a]lthough the decedent was not under oath, the statement was made immediately after the accident to the police officer and there is nothing in the record to suggest that the decedent had any

motive to falsify his statement to the officer." Focusing on the issue that persuaded the trial court—whether decedent had a reason to lie to the police in giving his version of the accident—the panel concluded that it was "a credibility issue solely within the province of the jury and not subject to the trial court's determination on a motion for summary judgment." It therefore reversed the judgment of the trial court only in respect of the admissibility of decedent's post-accident statement to the police and remanded the case for further proceedings; it also affirmed the orders of the trial court defendant challenged in respect of the cross-appeal.

Defendant filed a petition for certification, which we granted, *Estate of Hanges v. Metro. Prop. & Cas. Ins. Co.*, 201 *N.J.* 439, 991 *A.2d* 229 (2009), limited to the issue of whether decedent's statements to the police concerning the cause of his October 31, 2004 automobile accident were admissible under *N.J.R.E.* 804(b)(6). For the reasons that follow, we affirm the judgment of the Appellate Division.

## II.

Asserting generally that the Appellate Division improperly reversed the trial court's evidentiary determination that decedent's statements to the police were inadmissible under *N.J.R.E.* 804(b)(6), defendant argues that appellate review of evidentiary decisions is subject to the abuse of discretion standard only and that the Appellate Division did not apply that standard. Substantively, defendant urges that there was no factual basis in the record to support the admission of decedent's statement to the police under *Rule* 804(b)(6), and that the trial court properly exercised its discretion in excluding those hearsay statements.

Plaintiff claims that, because this appeal arises from a grant of summary judgment, the standard of review in respect of an issue of law is plenary, that is, that the review of issues of law is de novo and no deference is due to the trial court's legal conclusions; it also argues that, "[u]nder any standard of review, the Appellate Division correctly concluded that [decedent's statements to the

police were admissible]." Substantively, plaintiff asserts that the Appellate Division correctly held that decedent's statements to the police are admissible under *Rule* 804(b)(6) and that the trial court erred because it did not consider the salutary purposes underlying that *Rule*.

### III.

The parties' quarrel centers first on the appropriate standard of review, and then, applying the correct standard, on whether decedent's post-accident statements to the police were admissible. We address those contentions in that order and turn, preliminarily, to defining the standard of review for this appeal.

### A.

Recent decisions reinforce that "[i]n reviewing a trial court's evidential ruling, an appellate court is limited to examining the decision for abuse of discretion[,]" *Hisenaj v. Kuehner,* 194 *N.J.* 6, 12, 942 *A.*2d 769 (2008), a proposition this Court uniformly has endorsed, *State v. Coder,* 198 *N.J.* 451, 468, 968 *A.*2d 1175 (2009);[6] *State v. Schnabel,* 196 *N.J.* 116, 131, 952 *A.*2d 452 (2008); *State ex rel. J.A.,* 195 *N.J.* 324, 340, 949 *A.*2d 790 (2008); *State v. Buda,* 195 *N.J.* 278, 294, 949 *A.*2d 761 (2008); *State v. Kemp,* 195 *N.J.* 136, 149, 948 *A.*2d 636 (2008); *State v. Lykes,* 192 *N.J.* 519, 933 *A.*2d 1274 (2007); *Brenman v. Demello,* 191 *N.J.* 18, 31, 921 *A.*2d 1110 (2007).

In a related vein germane to the review of legal conclusions reached on summary judgment, since *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995), we consistently have held that "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference[,]" and, hence, an "issue of law [is] subject to de novo plenary appellate re-

---

[6] *See R.* 1:7–3 (describing governing procedures in respect of admitted and excluded evidence, respectively).

view[,]" [7] *City of Atl. City v. Trupos,* 201 *N.J.* 447, 463, 992 *A.*2d 762 (2010) (citations omitted), regardless of the context, *see, e.g., In re Petition for Referendum on Trenton Ordinance 09–02,* 201 *N.J.* 349, 358, 990 *A.*2d 1109 (2010) (per curiam) (reviewing legal conclusions within the context of municipal determinations); *Nicastro v. McIntyre Mach. Am., Ltd.,* 201 *N.J.* 48, 61, 987 *A.*2d 575 (2010) (exercise of long-arm jurisdiction); *State v. McCabe,* 201 *N.J.* 34, 45, 987 *A.*2d 567 (2010) (judicial recusal); *Marino v. Marino,* 200 *N.J.* 315, 334, 981 *A.*2d 855 (2009) (disinterment); *M.S. v. Millburn Police Dept.,* 197 *N.J.* 236, 246 n. 10, 962 *A.*2d 515 (2008) (return of firearms purchaser identification card).

Given the procedural posture of this case, we are presented with an apparent hybrid: an evidentiary decision (which is subject to the abuse of discretion standard of review) made within the context of a summary judgment application (which produced a legal conclusion itself subject to a plenary de novo review). Those seemingly contrasting concerns lie at the root of the parties' initial disagreement. In its nascent stage, however, we reject any such claim of conflict as illusory.

Although decisions concerning the admissibility of evidence clearly are the product of the application of our *Rules of Evidence* to adduced facts, and thus are themselves pure issues of law, our jurisprudence uniformly has recognized that appellate review of evidence determinations should be limited. Thus, when issues arising in respect of evidentiary rulings are squarely joined, "[g]enerally, appellate courts review a trial court's determination of the admissibility of evidence for an abuse of discretion." *State v. Harvey,* 151 *N.J.* 117, 166, 699 *A.*2d 596 (1997) (citation omitted).

▮▮▮▮▮▮ Evidentiary decisions are reviewed under the abuse of discretion standard because, from its genesis, the decision to

[7] As noted earlier, in this summary judgment setting we are required to consider the facts in the light most favorable to the non-moving party. *See supra* at 374–75, 997 *A.*2d at 957–58. Therefore, our discussion is limited to the

admit or exclude evidence is one firmly entrusted to the trial court's discretion. *Green v. N.J. Mfrs. Ins. Co.*, 160 *N.J.* 480, 492, 734 *A.*2d 1147 (1999) (concluding that "[t]he trial court is granted broad discretion in determining both the relevance of the evidence to be presented and whether its probative value is substantially outweighed by its prejudicial nature"); *see also State v. Koedatich,* 112 *N.J.* 225, 313, 548 *A.*2d 939 (1988) (emphasizing that, in making evidentiary decisions, "the trial court has been entrusted with a wide latitude of judgment [and, as a result the] trial court's ruling will not be upset unless there has been an abuse of that discretion, *i.e.*, there has been a clear error of judgment" (citations and internal quotation marks omitted)). And, as with like determinations also entrusted to the sound discretion of the trial court, " 'a reviewing court should uphold the . . . findings undergirding the trial court's decision if they are supported by adequate, substantial and credible evidence on the record.' " *MacKinnon v. MacKinnon*, 191 *N.J.* 240, 253–54, 922 *A.*2d 1252 (2007) (quoting *N.J. Div. of Youth & Family Servs. v. M.M.*, 189 *N.J.* 261, 279, 914 *A.*2d 1265 (2007)). Stated differently, then, the latitude initially afforded to the trial court in making a decision on the admissibility of evidence—one that is entrusted to the exercise of sound discretion—requires that appellate review, in equal measures, generously sustain that decision, provided it is supported by credible evidence in the record.[8]

As a practical matter, a trial court confronted with an evidence determination precedent to ruling on a summary judg-

---

review of the legal conclusions reached by the trial court in that procedural setting.

[8] When, as here, summary judgment disposing of the case is granted, the basis for the trial court's decision must be set forth clearly. *Rule* 1:7–4(a) explicitly requires that trial courts "shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon . . . on every motion decided by a written order that is appealable as of right[;]" an order granting summary judgment and disposing of the case is a final judgment and is appealable as of right. *See R.* 2:2–3(a)(1). Reasoned and clearly stated findings of fact and conclusions of law are critical to meaningful and informed appellate review.

ment motion squarely must address the evidence decision first. In doing so, it must be guided by the applicable *Rules of Evidence* as well as by the overarching mandate of *Rule* 104 (providing that "[w]hen the ... admissibility of evidence ... is subject to a condition, and the fulfillment of the condition is in issue, that issue is to be determined by the judge" without resort to "the rules of evidence except for *Rule* 403 or a valid claim of privilege"). It is only after the trial court has made the findings required to either admit or exclude the proffered evidence and has made a ruling thereon that it may proceed to determine the then-pending summary judgment. On appeal, then, those rulings will be gauged separately: the evidentiary ruling under an abuse of discretion standard, and the legal conclusions undergirding the summary judgment motion itself on a plenary de novo basis.

Having concluded that the appropriate standard of review of the question certified before us is whether, under *N.J.R.E.* 804(b)(6), the trial court abused its discretion in excluding decedent's statements to the police, it is to the consideration of that question that we now turn.

### B.

Again, *Rule* 804(b)(6) expressly provides that, "[i]n a civil proceeding, a statement made by a person unavailable as a witness because of death [is not excluded by the hearsay rule] if the statement was made in good faith upon declarant's personal knowledge in circumstances indicating that it is trustworthy." As *DeVito* explains,

> [t]o admit evidence under *N.J.R.E.* 804(b)(6) four conditions must be satisfied: (1) the declarant must be dead; (2) the statement must have been made in good faith; (3) the statement must have been made upon the declarant's own personal knowledge; and (4) there must be a probability from the circumstances that the statement is trustworthy. *Ayala v. Lincoln,* 147 *N.J.Super.* 304, 307, 371 *A.2d* 302 (App.Div.1977). A trial court must make particularized findings of good faith, personal knowledge and trustworthiness prior to the admission of evidence of this nature under this hearsay exception. *Jeter v. Stevenson,* 284 *N.J.Super.* 229, 233, 664 *A.2d* 952 (App.Div.1995) (holding that failure of trial court to address either "good faith" or "trustworthiness" necessitated remand for preliminary hearing).

[*Supra,* 165 *N.J.* at 194, 755 *A.*2d 1147.]

The first and third elements—that the declarant be dead[9] and that the statement be based on the declarant's personal knowledge[10]—are self-evident; the second and fourth elements—that the statement had been made in good faith and that the statement was trustworthy—require additional, more nuanced analysis.

 Addressing the "good faith" condition precedent to invocation of the *Rule,* *DeVito* noted that "the mandate of a positive finding of good faith under *N.J.R.E.* 804(b)(6) is not satisfied simply by a finding of the absence of bad faith." *Ibid.* (citation and internal quotation marks omitted). Turning to the question of trustworthiness, *DeVito* instructs that " 'an absolute standard of trustworthiness is not essential before evidence is admissible under [804(b)(6)]. The court need find only a probability that the statement is trustworthy from the flavor of the surrounding circumstances. The determination is a subjective one.' " *Id.* at 195, 755 *A.*2d 1147 (quoting *Beckwith v. Bethlehem Steel,* 185 *N.J.Super.* 50, 63, 447 *A.*2d 207 (Law Div.1982)). *DeVito* further explains that "[f]actors that are of assistance when considering the trustworthiness of a statement include: whether the statement was made under oath; the duration of time between the event and the statement; whether the declarant had firsthand knowledge; and the credibility of the declarant." *Id.* at 195–96, 755 *A.*2d 1147 (citing 2 *McCormick on Evidence* § 324 (5th ed. 1999)).

---

[9] The specific requirement that the declarant be dead parallels one of the definitions of an "unavailable" declarant under the *Rule. See N.J.R.E.* 804(a)(4).

[10] The condition precedent of personal knowledge complies and is consistent with general principles of witness competence. *See N.J.R.E.* 602 (providing that fact "witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter"). *See also Biro v. Prudential Ins. Co. of Am.,* 57 *N.J.* 204, 271 *A.*2d 1 (1970), *rev'g o.b.* 110 *N.J.Super.* 391, 403, 265 *A.*2d 830 (Matthews, J.A.D., dissenting) (noting that " '[k]nowledge is requisite for testimonial qualification' " (quoting *Priest v. Poleshuck,* 15 *N.J.* 557, 562, 105 *A.*2d 541 (1954))).

Those principles stand unchallenged. Therefore, we apply them to the facts as presented in this summary judgment record.

## C.

As did both the trial court and the Appellate Division, we readily dispose of the first and third elements needed to sustain the admissibility of a hearsay statement under *Rule* 804(b)(6): the parties concede that the declarant is dead and that he spoke from personal knowledge when he made the contested statement. We therefore focus our attention on the second and fourth elements of that hearsay exception—good faith and trustworthiness—which the trial court conflated into but one element.

In excluding decedent's statement to the police, the trial court concluded that plaintiff had "failed to show that the decedent's statement was made in good faith or it was ... trustworthy." According to the trial court, but without reference to any record evidence, "decedent had reason to not be forthcoming in this situation." It stated that decedent had "crashed his car into an underpass and there was no other evidence of any other vehicles involved." Based on that, the trial court reasoned that "[a] person in these circumstances has much to gain if he or she can success-fully shift the blame to some other non-verifiable cause[ and that] under the circumstances in which the statement was made there is great incentive for a driver to skew the facts in [his] favor." It thus concluded that, "[f]or this reason the statements do not possess the requisite trustworthiness or reliability to be admitted under the hearsay exceptions for unavailable declarants and there-fore cannot be admitted as evidence."

The full record before the trial court, however, tells a different tale. No doubt, decedent was involved in a one-car crash, and there is only his statement upon which blame for the accident can be shifted to another. Further, the skepticism with which the trial court viewed decedent's statement, although not dispositive, is understandable. That said, the record before the trial court simply contained no objective proof of deceit by decedent: intu-

ition aside, there was no evidence adduced that demonstrated the impossibility or unlikelihood of decedent's statement.[11]

Counterbalancing those considerations, plaintiff adduced three later and entirely consistent statements made by decedent, each of which was made under circumstances—the procuring of medical services—where candor is at a premium and entirely consistent with the declarant's goals.[12] Also, decedent's statement to the police was made in close temporal proximity to the events they describe, thereby rebutting, in part, a claim of recent fabrication. *See, e.g., N.J.R.E.* 803(a)(2) (permitting, in reverse circumstances, use of prior consistent statement to "rebut an express or implied charge against the witness of recent fabrication").

In the face of a lopsided record, where a version of events consistently told is countered solely by an intuitive but unsupported notion of self-interest, a determination that ignores the record facts in favor of intuition cannot be said to be based on substantial, credible evidence in the record and, therefore, constitutes a clear error in judgment. In those circumstances, and despite the deference normally due to a trial court's evidentiary decisions, we are compelled to conclude that the trial court's exclusion of decedent's statement to the police in rendering its decision on defendant's motion for summary judgment constitutes an abuse of discretion and cannot be sustained. Furthermore, because the trial court should have considered decedent's statement to the

---

[11] To the extent the November 4, 2004 automobile loss notice form assigns a "stuck" accelerator as the cause of the accident, the weight to be accorded to it is negligible: its author is undisclosed and the source of the information therein also is unknown.

[12] Although the consistent statements made by decedent to the physicians at the Trauma Center, the physician in Florida and his psychologist are themselves hearsay statements, they properly are to be considered at the *Rule* 104 hearing in determining the preliminary question of the admissibility of decedent's statement to the police. *See N.J.R.E.* 104(a) (providing that, in determining admissibility of evidence, "the judge shall not apply the rules of evidence except for *Rule* 403 [applying balancing test to exclude otherwise relevant evidence] or a valid claim of privilege").

police as competent, relevant and material evidence of a "phantom vehicle"—thus triggering the uninsured motorist coverage decedent purchased from and was provided by defendant—and because we owe no deference to the trial court's legal conclusions in respect of its summary judgment order, we also conclude that the entry of summary judgment in defendant's favor was in error.[13]

## IV.

The judgment of the Appellate Division is affirmed, the judgment of the Law Division granting summary judgment in favor of defendant and against plaintiff is vacated, and the case is remanded to the Law Division for further proceedings consistent with the principles to which we have adverted.

*For affirmance/vacation/remandment*—Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—6.

*Opposed*—None.

---

[13] Nothing in this opinion shall be read or construed as concluding that decedent's statement to the police constitutes definitive proof of the events surrounding the accident of October 31, 2004. While we have made a determination concerning the admissibility of that statement, we echo the Appellate Division's reasoning and express no view as to the weight to be accorded those proofs or the credibility judgment to be made thereon, both of which reside squarely with the factfinder.