# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4776-16T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

L.A.,

     Defendant-Appellant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF A.A.,

     a Minor.

_____

        Submitted December 4, 2018 – Decided January 23, 2019

        Before Judges Sabatino and Mitterhoff.

        On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FG-20-0004-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Suzanne J. Shaw, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Tara B. LeFurge, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Karen A. Lodeserto, Designated Counsel, on the brief).

PER CURIAM

L.A. appeals from a June 22, 2017 judgment terminating her parental rights to her daughter A.A.[1] and granting the Division of Child Protection and Permanency ("Division") guardianship of A.A., with the plan that A.A. be adopted by her resource parent. L.A. argues that the Division failed to prove prongs two and four prong of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence as required to terminate parental rights. L.A. also argues that the trial court erroneously allowed A.A.'s resource parent to testify via telephone. The Division and the child's law guardian urge that we affirm the judgment and allow the adoption to proceed. Having considered the parties' arguments in light of the record and applicable legal standards, we affirm substantially for the reasons

---

[1] We use initials to protect the confidentiality of the participants in these proceedings. R. 1:38-3(d)(12).

set forth by Judge James Hely in his comprehensive oral decision rendered on June 22, 2017.

The facts and evidence are detailed in Judge Hely's oral opinion, which he rendered after a three-day trial. A summary of the relevant facts will suffice here. L.A. has a long history with the Division. The instant matter was referred to the Division by way of L.A.'s roommate who informed the Division that L.A. was smoking crack cocaine in front of then-five-year-old A.A. The Division removed A.A. from L.A.'s care after L.A. admitted to using cocaine and drinking alcohol, and an investigation revealed that L.A. had often left A.A. home alone.

After A.A.'s removal, L.A. was diagnosed with recurrent and severe major depressive disorder, schizoaffective disorder – depressive type, cocaine and opioid dependence, and an unspecified personality disorder.

Throughout the litigation, the Division referred L.A. to multiple services for her mental health and substance abuse issues. However, L.A. was discharged from each of these programs for non-compliance with its rules or non-attendance. Several of the programs from which L.A. was discharged recommended that L.A. participate in a program that could offer her a higher level of care. L.A. repeatedly tested positive for drug use and admitted to

3

relapsing into opiate abuse. She also admitted that she was not taking her prescribed medication for her mental health issues.

Prior to A.A's placement with her maternal aunt, and current resource parent, A.H., the Division placed A.A. with a different relative. However, A.A. was ultimately removed from that home after it was reported that L.A. asked A.A. numerous inappropriate and probing questions regarding her resource home during supervised visits.

During the three-day trial, the Division applied to the court to permit A.H. to testify telephonically because she had recently been in a car accident and had two school-aged children to care for, which made travel from her home in Delaware difficult. The Law Guardian supported the Division's application. L.A. objected. The court permitted A.H. to testify telephonically, but provided that if the method of testimony proved ineffective, the court would require her appearance at a future date. L.A. indicated that she found the trial court's resolution "agreeable." Following her telephonic testimony, all parties consented to the procedure and did not seek an additional date from the court.

During A.H.'s testimony, she expressed her strong preference for adoption and noted that her husband shared that preference. She explained that she had entered into a kinship legal guardianship arrangement involving her grandson,

4

who also resides in her home, but that she preferred to adopt her niece A.A., because the family had dealt with over twenty-five years of L.A.'s drug abuse and aggression. A.H. felt adoption within the family was in A.A.'s best interest.

On June 22, 2017, the trial court entered a decision and order terminating L.A.'s parental rights and awarding the Division guardianship of A.A. The court concluded that the Division proved by clear and convincing evidence all four prongs of the statutory test for the termination of parental rights under N.J.S.A. 30:4C-15.1(a).

On appeal, L.A. first contends that the trial court erred by allowing A.H. to testify telephonically. Appellate courts review a trial court's evidentiary rulings for abuse of discretion. Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 374 (2010).

Generally, "issues not raised below will . . . not be considered on appeal unless they are jurisdictional in nature or substantially implicate the public interest." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 339 (2010). However, "appellate court[s] may, in the interests of justice, notice plain error not brought to the attention of the trial or appellate court[,]" if "it is of such a nature as to have been clearly capable of producing an unjust result[.]" R. 2:10-2.

Moreover, the court rules "do not expressly require [live witness testimony], or directly prohibit remote testimony by telephone." State v. Santos, 210 N.J. 129, 139 (2012).

> The test [for whether to allow telephonic testimony] is comprised of two parts. First, the court must determine whether the opposing party has consented to the testimony or whether there is a "special circumstance," also referred to as an "exigency," Second, the court must be satisfied that the "witness' identity and credentials are known quantities" and that there is some "circumstantial voucher of the integrity of the testimony."
>
> [Id. at 141 (citations omitted) (quoting Aqua Marine Products, Inc. v. Pathe Computer Control Systems Corp., 229 N.J. Super. 264, 275 (App. Div. 1988)).]

After review of the record and the applicable legal principles, we conclude that the trial court properly exercised its discretion in allowing A.H. to testify telephonically. Estate of Hanges, 202 N.J. at 374. L.A., through counsel, consented to the telephonic testimony; thus, the court was not required to make any specific findings of special circumstances. See Santos, 210 N.J. at 141. That said, the trial court did find that A.H.'s recent car accident, her lack of access to a vehicle with which to drive from Delaware to New Jersey, and her custody of two school-aged children amounted to special circumstances warranting telephonic testimony. See ibid. L.A. did not object to any of these

6

findings during trial, and cannot do so now, as they do not "substantially implicate the public interest" or create a genuine risk of unjust result. See M.C. III, 201 N.J. at 339; R. 2:10-2.

Additionally, there were no questions raised that the person on the phone might not be A.H. and there were no objections raised that her testimony was not competent. Thus, we conclude that the trial court properly exercised its discretion by allowing A.H. to testify via telephone. Estate of Hanges, 202 N.J. at 374.

Next, L.A. contends that the Division failed to prove with clear and convincing evidence prongs two and four of N.J.S.A. 30:4C-15.1(a).

Appellate review of a trial court order terminating parental rights is limited. N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007). "A Family Part's decision to terminate parental rights will not be disturbed when there is substantial credible evidence in the record to support the court's findings." N.J. Div. of Child Prot. & Permanency v. K.T.D., 439 N.J. Super. 363, 368 (App. Div. 2015) (citing N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012)). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should an appellate court intervene and make its own findings to ensure that there is not a denial of justice." N.J. Div.

A-4776-16T1

of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting G.L., 191 N.J. at 605).

When addressing the termination of parental rights, the court must consider the "best interests of the child." In re Guardianship of K.H.O., 161 N.J. 337, 347 (1999). The Division's petition to terminate parental rights may only be granted if the following four prongs enumerated in N.J.S.A. 30:4C-15.1(a) are established by clear and convincing evidence:

> (1) The child's safety, health or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.
>
> [N.J.S.A. 30:4C-15.1(a).]

"The four criteria enumerated in the best interests standard are not discrete and separate; they relate to and overlap with one another to provide a comprehensive standard that identifies a child's best interests." K.H.O., 161 N.J. at 348. The considerations involved in applying the best interests test are "'extremely fact sensitive' and require particularized evidence that address the specific circumstance in the given case." N.J. Div. of Youth & Family Servs. v M.M., 189 N.J. 261, 280 (2007) (quoting N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 88 (App. Div. 2005)).

The second prong focuses on parental unfitness and overlaps with the proofs that are relied upon in regards to prong one. D.M.H., 161 N.J. at 379. When a court is considering this prong, it "should only determine whether it is reasonably foreseeable that the parents can cease to inflict harm upon the children entrusted to their care." N.J. Div. of Youth & Family Servs. v. A.W., 103 N.J. 591, 607 (1986). To satisfy this inquiry, the Division may show that the parent is unable to provide a safe and stable home and "that the delay in securing permanency continues or adds to the child's harm." K.H.O., 161 N.J. at 348-49. While the focus under the second prong "is not whether the parent is now fit, but whether the parent can become fit in time to meet the needs of the children," N.J. Div. of Youth & Family Servs. v. F.M., 375 N.J. Super. 235, 263

(App. Div. 2006), "[c]hildren must not languish indefinitely in foster care while a parent attempts to correct the conditions that resulted in an out-of-home placement." N.J. Div. of Youth & Family Servs. v. S.F., 392 N.J. Super. 201, 209-10 (App. Div. 2007) (citing K.H.O., 161 N.J. at 111).

Under the fourth prong, the inquiry is whether "the child will suffer a greater harm from the termination of ties with her natural parents than from the permanent disruption of her relationship with her foster parents." K.H.O., 161 N.J. at 355. It does not, however, "require a showing that no harm will befall the child as a result of the severing of biological ties." Ibid. The Division's proofs should include testimony by an expert who has had an opportunity to make a "comprehensive, objective, and informed evaluation of the child's relationship with the foster parent[,]" and the court must also consider "parallel proof relating to the child's relationship with his or her natural parents in assessing the existence, nature, and extent of the harm facing the child." Ibid.; F.M., 211 N.J. at 453. See also M.M., 189 N.J. at 286-88; N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 564-65 (2014). However, where the termination is "not predicated upon bonding, but rather reflect[s] [the child's] need for permanency and [the biological parent's] inability to care for [the child] in the foreseeable future[,]" a lack of a bonding evaluation is not fatal to the

Division's case. N.J. Div. of Youth & Family Servs. v. B.G.S., 291 N.J. Super. 582, 593-94 (App. Div. 1996).

After review of the trial record, and in light of the legal standards above, we conclude that the substantial credible evidence in the record supports the trial court's findings with respect to both the second and fourth prongs. First, L.A.'s persistent inability to comply with mental health and drug abuse treatment demonstrates that she cannot eliminate the harm to A.A. in the near future. See A.W., 103 N.J. at 607; F.M., 375 N.J. Super. at 263; S.F., 392 N.J. Super. at 209-10. The Division's evidence demonstrated that L.A. was repeatedly discharged from services for mental health and drug abuse treatment, to which she was referred by the Division, for lack of compliance. L.A. also repeatedly tested positive for drugs after being referred to the Division, and has admitted to relapsing.

Additionally, regarding the fourth prong, the trial court's finding that the Division satisfied its burden was based primarily on L.A.'s inability to provide "a safe and healthy home for her child." We disagree with L.A.'s contention that proof under prong four requires expert testimony. Given that the trial court found that L.A. exhibits severe and persistent parenting deficits, and that it based its findings for prong four on those evidenced deficits, the trial court did not err

11

in concluding that terminating L.A.'s parental rights will do A.A. more good than harm. See K.T.D., 439 N.J. Super. at 368; B.G.S., 291 N.J. Super. at 593-94. For these reasons, we find that the trial court's findings on prongs two and four are supported by substantial credible evidence in the record.

The remaining arguments raised by L.A. are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION