# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2515-19

V. P.,[1]

    Plaintiff-Respondent,

v.

K.C.B.,

    Defendant-Appellant.

_____

        Submitted December 6, 2021 – Decided February 9, 2022

        Before Judges Sumners and Vernoia.

        On appeal from the Superior Court of New Jersey, Law Division, Chancery Division, Family Part, Somerset County, Docket No. FV-18-0406-20.

        Wronko Loewen Benucci, attorneys for appellant (Kevin Hewitt, Jr., of counsel and on the brief).

        Respondent has not filed a brief.

PER CURIAM

---

[1] We use initials to identify the parties because the names of victims of domestic violence are excluded from public access under <u>Rule</u> 1:38-3(d)(10).

Defendant appeals from a final restraining order (FRO) entered against her pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, for committing the predicate acts of harassment and stalking against plaintiff, her former boyfriend. Defendant argues:

POINT I

THE TRIAL COURT HAS AN AFFIRMATIVE DUTY TO INTERVENE TO ENSURE A FAIR TRIAL WHICH WAS NEGATED BY ITS REPEATED ADMISSION OF HEARSAY AND PREJUDICIAL EVIDENCE.

POINT II

THE TRIAL COURT ERRED IN ITS CREDIBILITY DETERMINATIONS AND ITS FACTUAL FINDINGS ARE NOT SUPPORTED BY CREDIBLE EVIDENCE.

POINT III

THE TRIAL COURT INCORRECTLY FOUND THAT THE PLAINTIFF HAD PROVED THE PREDICATE ACT OF HARASSMENT.

POINT IV

THE TRIAL COURT INCORRECTLY FOUND THAT THE PLAINTIFF HAD PROVED THE PREDICATE ACT OF STALKING.

2

POINT V

THE TRIAL COURT INCORRECTLY FOUND AN
FRO WAS NEEDED TO PROTECT THE VICTIM
UNDER [THE] SECOND PRONG OF SILVER.[2]

Having considered these arguments in light of the record and applicable legal principles, we affirm.

I

At the FRO trial, plaintiff alleged defendant harassed and stalked him, constituting predicate acts of domestic violence. N.J.S.A. 2C:25-19(a)(13)-(14). Harassment is defined, in relevant part, as "[e]ngag[ing] in any . . . course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person." N.J.S.A. 2C:33-4(c). Stalking occurs when someone "purposefully or knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person to fear for his safety or the safety of a third person or suffer other emotional distress." N.J.S.A. 2C:12-10(b). For the purposes of stalking:

> (1) "Course of conduct" means repeatedly maintaining
> a visual or physical proximity to a person; directly,
> indirectly, or through third parties, by any action,
> method, device, or means, following, monitoring,

---

[2] Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006).

3

observing, surveilling, threatening, or communicating to or about, a person, or interfering with a person's property; repeatedly committing harassment against a person; or repeatedly conveying, or causing to be conveyed, verbal or written threats or threats conveyed by any other means of communication or threats implied by conduct or a combination thereof directed at or toward a person.

(2) "Repeatedly" means on two or more occasions.

(3) "Emotional distress" means significant mental suffering or distress.

(4) "Cause a reasonable person to fear" means to cause fear which a reasonable victim, similarly situated, would have under the circumstances.

[N.J.S.A. 2C:12-10(a).]

The testimony revealed the parties were involved in a steady romantic relationship for over a year, until they broke up in November 2018, and then began dating on-again, off-again for several months, eventually ending their relationship for good at the end of March 2019. Defendant claimed the relationship ultimately ended when she found out that plaintiff was dating another woman.

Before and after the parties' relationship ended, plaintiff became concerned when he believed defendant was following him because he began seeing her or running into her at unexpected places and times. He found trackers

under his car on January 12, May 10, 28, and 31, June 2 and 7, and July 4, 2019.
In fact, defendant admitted she "placed trackers[3] on [his] car prior to when [they] stopped talking" but "didn't have anything to do with them past . . . April." She acknowledged that if a tracker was placed on plaintiff's car in April it would remain there until it was removed but its limited battery life was two weeks to a month. Plaintiff stated trackers were also found on the cars of his parents and a female friend. Defendant claimed she had "nothing to do with" those trackers.

Plaintiff said that on July 27, 2019, he, "a friend[,] and her sister were visiting or in the area, so we went to have pizza together . . . , and I think within like, [ten] minutes of sitting down, . . . I saw . . . defendant walk around outside, . . . poke[] her head in, look[] at me, smirk[], [and] walk[] away." Defendant admitted she saw him at a pizzeria when she was there to pick up some food but said nothing to him and immediately walked away.

On August 10, plaintiff attended a Somerset Patriots minor league baseball game with his co-workers and saw defendant there. He testified that as he was in the stadium, he "[saw] her walking by. [She] look[ed] at me, ma[de] a smirk[,] and then walk[ed] away." He believed she was there to follow him.

---

[3] Defendant bought the trackers on the internet and linked them to send signals to her cell phone.

She was neither a baseball nor Patriots fan, according to plaintiff, and they had never gone to a game together before. Defendant testified she saw him at a Patriots game, but it was on September 10 for Bark in the Park night, when fans took their dogs to the game. She was there because an animal shelter she volunteered was an event sponsor. She denied being at the Patriots game on August 10.

On September 25, plaintiff was meeting a friend at a parking lot in the Princeton area before taking her to Philadelphia when he saw defendant following him. She claimed she was on her way to dinner with a colleague when they saw each other in a parking lot. She accused plaintiff of following her, thinking he wanted her to return an ankle bracelet that he brought her, which she gave him and then drove off. Later that night, defendant went to Philadelphia to meet a different friend who had recently moved there but she did not see plaintiff, contending she was unaware that he was also in Philadelphia that night.

Plaintiff said that on October 8, he had gone to funeral home with a friend and when he came out, defendant was sitting on a bench outside the funeral home. She then walked away. She claimed the location was a Methodist church fifteen minutes away from her home and she was there to meet a friend at a restaurant which happened to be across the street. She said that, after seeing

6

plaintiff, she immediately walked away without saying anything, but he followed her for a couple of minutes.

On October 12, plaintiff was in a park with a friend, who stated "there's someone watching us" from nearby bushes. Plaintiff could not positively identify the person, who was wearing a hoodie and crouched in the bushes, but he believed it was a female. That day, defendant made a Facebook post stating she was hospitalized for a poison ivy infection. She testified she had poison ivy before October 12, and was not in the park that day because she was doing animal rescue.

On October 24, plaintiff obtained a temporary restraining order (TRO) against defendant based upon the allegations of harassment and stalking, N.J.S.A. 2C:12-10(b).

Plaintiff claimed that due to his history with defendant, the trackers she placed on his car, and seeing him on several occasions at unexpected places, he was seeking final restraints. He testified, "I live in, basically, paranoia. If I hear a sound outside my window at three in the morning, I'm jumping out of bed to see if there's some person in my car. It's, you know, and then . . . , in fear for my family[.]" He further indicated that "fear is what's causing me to do this right now. . . . [I]t's almost like it's been controlling my life because [until now]

7

I . . . haven't done [anything] about it." He wanted "boundar[ies]" to prevent defendant's future contact with him.

Franklin Township Detective Ordel Taylor, who testified on behalf of plaintiff, discussed his investigation into plaintiff's complaints about defendant, relying upon his reports and notes. He did a license plate reader inquiry on defendant's car, which determined her car was in Philadelphia on September 25. The judge overruled defendant's hearsay objection to Taylor's testimony that GPS trackers were found on his parents' car and on his friend's car. Taylor confirmed there were five global positioning systems (GPS) trackers on the cars of plaintiff and his friend and family, and determined they belonged to defendant based on information he found on her cell phone following her arrest. The judge overruled defense counsel's objection to Taylor's testimony regarding: (1) his discovery through social media that defendant checked herself into the emergency room for a poison ivy infection shortly after plaintiff reported to the police that someone was hiding in the woods at a park watching him and a friend; and (2) defendant's car being in Philadelphia on September 25, based on information from license plate readers. The judge, over defendant's objection, also allowed plaintiff to testify about Taylor's investigative efforts during which

he searched defendant's phone because it was merely a repeat of Taylor's testimony.

At the trial's conclusion, the judge issued an FRO against defendant under Silver based on harassment and stalking. In his bench decision, the judge found plaintiff's testimony was "inherently believable," citing his demeanor and direct responses to questions. The judge also found Taylor credible. On the other hand, he found defendant's testimony evasive and incredible, coming across as an embittered ex-girlfriend. He found it was hard to believe that on September 25 she just happened to be in the Princeton area and Philadelphia on the same night as plaintiff when she lived in Warren.

The judge found defendant had no legitimate reason for her contacts with plaintiff on September 25, October 8, October 15, and October 14, 2019, especially after he previously told her leave him alone.[4] The judge thus determined defendant's contacts were solely to harass plaintiff under N.J.S.A. 2C:33-4(c) because she "engag[ed] in . . . [a] course of alarming conduct or of repeatedly committed acts with [the] purpose to alarm or seriously annoy [him]."

_____

[4] The judge did not find defendant harassed or stalked plaintiff at the Patriots game on August 10. Although he found plaintiff was credible, the judge suggests the contact occurred on September 10, the date defendant admitted attending a Patriots game. However, the judge provided no specific explanation for his finding.

The judge further determined that defendant's conduct constituted stalking under N.J.S.A. 2C:12-10(b) because she "engag[ed] in a course of conduct directed at [plaintiff] that . . . would cause a reasonable person to fear for his safety or suffer other emotional distress." He specifically pointed to the "number of occasions [defendant] placed tracking devices on . . . plaintiff's car, the contin[ous] . . . sightings of her in various locations[,] clearly would cause a reasonable person . . . to suffer emotional distress . . . [as] plaintiff described[.]"

In determining that final restraints were required, the judge reasoned:

> the only thing that appears to have stopped [defendant's] behavior . . . was the issuance of the [TRO] and . . . without a restraining order, . . . defendant, . . . in my opinion, will continue this harassment . . . in all likelihood and that . . . plaintiff needs to be protected for his own peace of mind, meaning his own . . . psychological welfare that a[n] . . . [FRO will provide].

II

In a domestic violence case, we accord substantial deference to the family judge's findings, which "are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Deference is especially given when much of the evidence is testimonial and implicates credibility determinations. Id. at 412. We do not disturb the judge's

10

factual findings and legal conclusions, unless we are "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Rova Farms, 65 N.J. at 484).

When determining whether to grant an FRO pursuant to the PDVA, the trial judge must make two determinations. Silver, 387 N.J. Super. at 125-27. The first Silver prong is "whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125.

Upon finding the commission of a predicate act, the judge must then address the second Silver prong—whether an FRO is necessary to protect the plaintiff from future acts or threats of violence. Id. at 126. In other words, the judge must find that "relief is necessary to prevent further abuse." J.D. v. M.D.F., 207 N.J. 458, 476 (2011) (quoting N.J.S.A. 2C:25-29(b)); see also Silver, 387 N.J. Super. at 127 (explaining the judge must find that a FRO is necessary to protect "the victim from an immediate danger or to prevent further abuse"). The second prong, like the first, "must be evaluated in light of the previous history of domestic violence between the plaintiff and defendant including previous threats, harassment and physical abuse," as well as "whether

11

immediate danger to the person or property is present." Silver, 347 N.J. at 124 (quoting Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995) (citing N.J.S.A. 2C:25-29(a)(1)-(2))).

Applying those principles, we conclude there is no basis to disturb the factual findings or legal conclusions of the trial judge. The judge heard the testimony of the parties and Detective Taylor. The judge had the opportunity to assess their credibility based on believability and their demeanor. Defendant points to no evidence in the record that undermines the judge's credibility findings.

We dismiss defendant's contentions that the judge abused his discretion in allowing some of the testimony by Taylor and plaintiff. See State v. Prall, 231 N.J. 567, 580 (2018) ("The trial court's evidentiary rulings 'are reviewed under the abuse of discretion standard because, from its genesis, the decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion.'") (citing Estate of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)). Defendant incorrectly contends Taylor's testimony regarding his reliance on the license plate query to show that she was in Philadelphia on September 25 was inadmissible hearsay. Taylor relied on notes and reports prepared during his investigation of defendant to testify "fully and accurately"

because he could not remember all that he wrote. Therefore, under N.J.R.E. 803(c)(5)(A-C), his testimony was admissible as past recollection recorded. And even though she contends on appeal for the first time that Taylor relied on surveillance cameras videos without personal knowledge that they were accurate depictions of the information recorded, no plain error occurred. See R. 2:10-2 ("Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result . . . ."). There was no manifest injustice in the admission of the testimony because defendant admitted she was in Philadelphia that day. In fact, many of defense counsel's objections to testimony by plaintiff and Taylor were sustained.

The judge's finding that defendant harassed and stalked plaintiff is supported in the record that following their breakup, she ignored his directive that he wanted nothing to do with her and then admittedly placed tracking devices on his car allowing her to know where he was. Defendant's contention that she did not speak or interact with plaintiff is of no consequence; the fact she tracked his whereabouts to observe him and who he was with satisfied the elements of harassment and stalking. Likewise, her claim that her intent was not to harass, as the GPS trackers were meant to be hidden, is belied by the judge's sound findings. We discern no cause to upset the judge's adequate

13
A-2515-19

findings that an FRO was necessary to protect plaintiff as they are supported by his determination that plaintiff gave credible testimony.

To the extent we have not specifically addressed any of defendant's arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14                                                                 A-2515-19