**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0210-21

BARBARA ALLEN, administrator
ad prosequendum of the estate of
DAVID ALLEN, deceased,

     Plaintiff-Appellant,

v.

MANOR CARE OF VOORHEES
NJ, LLC, d/b/a MANORCARE
HEALTH SERVICES – VOORHEES
and HCR III HEALTHCARE, LLC,

     Defendants,

and

KENNEDY UNIVERSITY
HOSPITAL, INC.,[1]

     Defendant-Respondent.

_____

Submitted June 2, 2022 – Decided July 1, 2022

Before Judges Hoffman, Geiger and Susswein.

---

[1] Incorrectly pled as Jefferson Stratford Hospital.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1556-18.

Larissa K. Staszkiw (Swartz Culleton, PC), attorney for appellant (Larissa K. Staszkiw, on the briefs).

Parker McCay, PA, attorneys for respondent (Thomas M. Walsh, of counsel and on the brief; Merve Ocak, on the brief).

PER CURIAM

Plaintiff Barbara Allen, administrator ad prosequendum of the estate of David Allen, appeals from the February 19, 2021 order granting the summary judgment dismissal of her medical malpractice action against defendant Kennedy University Hospital, Inc. (Kennedy). Plaintiff also appeals from the January 8, 2021 order granting defendant Kennedy's motion to bar plaintiff's expert report from offering a causation opinion. We affirm.

I.

We discern the following facts and procedural history from the record. This matter concerns the care and treatment provided to David Allen (decedent) during the last fourteen months of his life. Specifically, plaintiff's complaint focused on decedent's development of pressure ulcers and the treatment he received for those ulcers.

On April 8, 2016, decedent was hospitalized at Kennedy for issues related to weakness, confusion, and a urinary tract infection. On April 11, 2016, Kennedy discharged decedent to Manor Care of Voorhees (Manor Care), a nursing and rehabilitation center, where he remained until April 23, 2016. Kennedy's discharge diagnoses for decedent included complicated urinary tract infection, atrial fibrillation, end-stage renal failure, diabetes, and hypertension.

In late June 2016, decedent returned to Kennedy, presenting to the emergency room with hematuria, abdominal pain, and nausea. Decedent was transferred to Cooper Hospital for further treatment. On July 13, 2021, decedent was admitted to Kennedy after falling twice in his home. On July 15, decedent returned to Manor Care for sub-acute rehabilitation. On July 22, while at Manor Care, a Stage I pressure ulcer was noted on decedent's sacrum.

On August 29, 2016, decedent returned to Kennedy, presenting to the emergency room due to altered mental status. Decedent was intubated and then admitted to the intensive care unit. He remained at Kennedy until September 3, 2016, when he was discharged to Manor Care; however, decedent collapsed upon his return and was subsequently taken back to Kennedy. Thereafter, decedent returned once again to Manor Care.

A-0210-21

On September 5, 2016, the Manor Care nursing staff noted a Stage II pressure ulcer on decedent's sacrum, with a deep tissue injury. That same month, an ulcer on decedent's right heel was noted; thereafter, it was determined that decedent was suffering from a Stage III pressure injury. On October 23, 2016, decedent returned to Kennedy, where he remained for the next four days; during this stay, Kennedy staff noted that decedent had a significant right heel ulcer and an ulcer on his sacrum.

On November 11, 2016, decedent returned to Kennedy due to altered mental status, hypercapnic respiratory failure, missed dialysis sessions, and mumbled speech. On December 19, 2016, decedent returned to Kennedy, complaining of diarrhea and other bowel-related issues. At this time, Kennedy staff noted a sacral decubitus ulcer with heel ulcers.

Between January 5, 2017, and February 23, 2017, decedent was admitted to Kennedy on three separate occasions, and received treatment for hypoglycemia, urinary tract infection, and other preexisting conditions. On May 6, 2017, decedent returned to Kennedy, after he was found unresponsive at home. By this time, decedent had developed pulmonary vascular congestion, coronary artery disease, tachycardia, and systemic inflammatory response syndrome.

4

On June 3, 2017, decedent returned to Kennedy, presenting with severe sepsis with septic shock and vancomycin resistant enterococcus (VRE) bacteremia. It was also noted that he had ulcers on his heels, a decubitus ulcer, and end-stage renal failure. On June 16, 2017, decedent passed away. The death certificate for decedent listed septic shock due to VRE bacteremia and fungemia as the cause of death.

On April 25, 2018, plaintiff filed a complaint against defendants Kennedy, Manor Care, and HCR Healthcare III, LLC, alleging that defendants and their nursing staffs were negligent and/or reckless in their treatment of decedent, resulting in decedent's wounds, infections, and death.

On October 12, 2020, plaintiff submitted the expert report and curriculum vitae of Rose Marie Valentine, R.N., a New Jersey licensed registered nurse and a Pennsylvania licensed nursing home administrator. In her report, Nurse Valentine opined that defendants Kennedy and Manor Care breached the standard of care in their identification and treatment of decedent's pressure ulcers, causing decedent to develop multiple wounds which thereafter became infected and ultimately caused his death.

On December 11, 2020, Kennedy filed a motion to bar plaintiff's expert report from offering a causation opinion. After hearing oral argument, the

motion court entered an order granting Kennedy's motion, concluding that nurses are not permitted to make medical diagnoses and offer causation opinions. That same day, Kennedy filed a motion for summary judgment based on plaintiff's failure to serve an expert report on causation. After hearing oral argument, the motion court entered an order granting Kennedy's motion and dismissing plaintiff's complaint with prejudice based on plaintiff's failure to provide an opinion from a qualified expert establishing causation.

On August 12, 2021, plaintiff filed a stipulation of dismissal with prejudice as to defendants Manor Care of Voorhees, NJ LLC, d/b/a ManorCare Health Services - Vorhees and HCR III Healthcare, LLC. Following the dismissal of those claims, plaintiff filed this appeal, challenging the order granting Kennedy's motion to bar plaintiff's expert opinion from offering a causation opinion and the subsequent order granting the summary judgment dismissal of plaintiff's claims against Kennedy.

II.

We review a ruling on summary judgment de novo, applying the same standard governing the trial court. Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014). Thus, we consider, as the motion judge did, "whether the competent evidential materials presented, when viewed in the light

6

most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Id. at 406. If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." DepoLink Ct. Reporting & Litig. Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 (1995)). We review issues of law de novo and accord no deference to the trial judge's conclusions on issues of law. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

"[A] trial court confronted with an evidence determination precedent to ruling on a summary judgment motion squarely must address the evidence decision first." Konop v. Rosen, 425 N.J. Super. 391, 402 (App. Div. 2012) (quoting Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 384-85 (2010)). "Appellate review of the trial court's decisions proceeds in the same sequence, with the evidentiary issue resolved first, followed by the summary judgment determination of the trial court." Townsend v. Pierre, 221 N.J. 36, 53 (2015) (citing Hanges, 202 N.J. at 385).

The evidentiary decision regarding the exclusion of the expert opinion is entitled to deference on appellate review. Id. at 52 (citing Bender v. Adelson,

187 N.J. 411, 428 (2006)).  We review de novo the legal consequences of the exclusion of the expert opinion as it affects plaintiff's ability to establish causation necessary to maintain a malpractice claim.  Id. at 59 (citing Davis, 219 N.J. at 405).

## A.

To establish a claim of medical malpractice, "a plaintiff must present expert testimony establishing (1) the applicable standard of care; (2) a deviation from that standard of care; and (3) that the deviation proximately caused the injury."  Nicholas, 213 N.J. at 478 (quoting Gardner v. Pawliw, 150 N.J. 359, 375 (1997)).  The burden of proof on all elements of a medical negligence claim – which includes that defendant's conduct proximately caused plaintiff's injury – is normally on the plaintiff.  Komlodi v. Picciano, 217 N.J. 387, 409 (2014).

The traditional burden of proof for establishing proximate cause requires "proof by a preponderance of the evidence that the injury complained of probably would not have occurred 'but for' the negligent conduct of the defendant."  Gardner, 150 N.J. at 377.  However, when the plaintiff suffers from a preexisting condition, as here, the burden of proof to establish causation is lessened.  "[B]ecause the preexistent condition itself serves as a 'but-for' cause of the ultimate injury[,]" ibid., in those cases, a more flexible standard requires

A-0210-21

a plaintiff to show that "as a result of a defendant's negligence, [the plaintiff] experienced an increased risk of harm from that condition, and that . . . increased risk of harm was a substantial factor in causing the injury ultimately sustained." Id. at 375.

Turning to the expert testimony at issue here, N.J.S.A. 45:11-23(b) provides, in pertinent part:

> The practice of nursing as a registered professional nurse is defined as diagnosing and treating human responses to actual or potential physical and emotional health problems, through such services as casefinding, health teaching, health counseling, and provision of care supportive to or restorative of life and well-being, and executing medical regimens as prescribed by a licensed or otherwise legally authorized physician or dentist. Diagnosing in the context of nursing practice means the identification of and discrimination between physical and psychosocial signs and symptoms essential to effective execution and management of the nursing regimen within the scope of practice of the registered professional nurse. Such diagnostic privilege is distinct from a medical diagnosis. Treating means selection and performance of those therapeutic measures essential to the effective management and execution of the nursing regimen. Human responses means those signs, symptoms, and processes which denote the individual's health need or reaction to an actual or potential health problem.

Interpreting N.J.S.A. 45:11-23(b), in State v. One Marlin Rifle, 319 N.J. Super. 359 (App. Div. 1999), we held that a wife, who was a certified clinical

nurse specialist and an advanced practice nurse in mental health and psychiatric nursing, was not qualified to render an expert opinion "with respect to a medical diagnosis of her former husband's mental condition." Id. at 368. The former husband opposed the State's weapons forfeiture action following the dismissal of a domestic violence complaint that the wife had filed against him on the ground that he did not "'pose a threat to public health, safety, or welfare' pursuant to N.J.S.A. 2C:58-3(c)(5)." Id. at 362. We interpreted N.J.S.A. 45:11-23(b) to permit registered nurses to provide a "nursing diagnosis," as opposed to a "medical diagnosis." Id. at 369. We noted "[a] nursing diagnosis identifies signs and symptoms only to the extent necessary to carry out the nursing regimen rather than making final conclusions about the identity and cause of the underlying disease." Ibid. We concluded that "[g]iven the statute's prohibition against a nurse providing such a diagnosis, the trial court's acceptance of such testimony was inappropriate even aside from issues of the interest and potential bias of the witness." Id. at 369-70.

Plaintiff's position essentially comes down to two arguments: 1) our holding in One Marlin Rifle is distinguishable and not controlling; and 2) we should consider the unpublished decisions of Detloff v. Absecon Manor Nursing Ctr. & Rehab. Ctr., No. A-5941-07 (App. Div. Mar. 30, 2009), and Rodriguez

<u>v. N.J. Dep't of Corr.</u>, No. A-4845-17 (App. Div. Dec. 4, 2019), which permitted nurses to testify as to causation under the particular facts of those cases. In addition, plaintiff argues in her reply brief that Nurse Valentine's opinion falls within the "diagnostic privilege" of the nursing practice statute, N.J.S.A. 45:11-23(b), and does not require a medical diagnosis. We are not persuaded by these arguments.

To start, we reject plaintiff's contention that <u>One Marlin Rifle</u> is not controlling. Despite the factually dissimilar circumstances, in <u>One Marlin Rifle</u>, we held that a wife, who was a certified clinical nurse specialist and an advanced practice nurse in mental health and psychiatric nursing, was not qualified to render an expert opinion as to causation. 319 N.J. Super at 368. Therefore, notwithstanding the fact that <u>One Marlin Rifle</u> involved a domestic violence complaint, it squarely addressed the issue presently before this court and held that nurses cannot provide an expert opinion regarding medical causation. While N.J.S.A. 45:11-23(b) recognizes that "[t]he practice of nursing as a registered professional nurse" includes "diagnosing and treating human responses to actual or potential physical and emotional health problems," the statute also clearly states that "[s]uch diagnostic privilege is distinct from a medical diagnosis."

11

As to plaintiff's arguments regarding the two unpublished cases, an unpublished opinion does not constitute precedent, nor is it binding upon us, unless we are required to follow an unpublished opinion by reason of res judicata, collateral estoppel, the single controversy doctrine, or similar principle of law. R. 1:36-3. While litigants are free to cite unpublished opinions to the court in accordance with Rule 1:36-3, we are, of course, free to disregard them. See Sciarrotta v. Glob. Spectrum, 194 N.J. 345, 353 n.5 (2008), and are generally prohibited from citing them. Our review of the cited unpublished opinions does not persuade us that we should reject our holding in One Marlin Rifle, that a nurse is not qualified to offer a medical diagnosis.

Here, Nurse Valentine's opinion does not fall within a nurse's diagnostic privilege, as set forth in N.J.S.A. 45:11-23(b). Such privilege allows nurses to opine as to the "identification of and discrimination between physical and psychosocial signs and symptoms essential to effective execution and management of the nursing regimen within the scope of practice of the registered professional nurse." N.J.S.A. 45:11-23(b). However, Nurse Valentine's opinion concluded that breaches of the standard of care caused decedent's ulcers to become infected and result in sepsis, ultimately leading to his death. Such a causation opinion, especially as it relates to a patient with various complex

12

comorbidities who was repeatedly admitted to the hospital in critical condition, does not fall within the diagnostic privilege. Such a conclusion exceeds the diagnostic privilege associated with a nurse's day-to-day care and treatment of a patient. Rather, this constitutes a medical diagnosis offered by a nurse, which One Marlin Rifle and N.J.S.A. 45:11-23 plainly prohibit.

B.

Next, we consider plaintiff's arguments concerning summary judgment granted to defendant Kennedy based on the exclusion of plaintiff's expert report.

In a medical malpractice action, generally "the causation element . . . is the most complex." Verdicchio v. Ricca, 179 N.J. 1, 23 (2004). Instead of the "but for" standard, "New Jersey courts apply the substantial factor test in medical malpractice cases involving preexisting conditions." Reynolds v. Gonzalez, 172 N.J. 266, 280 (2002). Moreover, "[e]vidence demonstrating within a reasonable degree of medical probability that negligent treatment increased the risk of harm posed by a preexistent condition raises a jury question whether the increased risk was a substantial factor in producing the ultimate result." Scafidi v. Seiler, 119 N.J. 93, 108 (1990).

Here, due to plaintiff's failure to furnish a qualifying expert report, plaintiff likewise fails to establish a nexus between Kennedy's alleged breaches

of the standard of care and decedent's injuries. In the absence of an opinion from a qualified expert, a jury would have no way of determining, other than resorting to conjecture or speculation, whether Kennedy's breaches were a substantial factor in causing decedent's injuries and death. Nor would a jury be able to determine whether Kennedy's breaches increased the risk of harm posed by the numerous preexisting conditions suffered by decedent. For these reasons, even when viewing the facts in the light most favorable to plaintiff, we find that the motion judge properly granted the summary judgment dismissal of plaintiff's claims against Kennedy.

In sum, the order barring plaintiff's expert report from offering a causation opinion and the order granting defendant Kennedy's motion for summary judgment are affirmed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0210-21